**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BRADLEY WARREN and PAULA GAY WARREN,** | |
| *Plaintiffs*, | **CIVIL ACTION** |
| | **NO. 15-01919** |
| **v.** | |
| **JOHNSON MATTHEY, INC.** *et al.*, | |
| *Defendants*. | |

**PAPPERT, J.**                                                           **January 19, 2016**

## MEMORANDUM

Plaintiffs Bradley and Paula Gay Warren ("the Warrens") sued Defendants Johnson

Matthey, Inc. ("Johnson Matthey"), Whittaker Corp. ("Whittaker"), Marcegaglia USA, Inc.

("Marcegaglia") and Constitution Drive Partners, L.P. ("Constitution Drive") (collectively

"Defendants"),[1] seeking recovery under the Comprehensive Environmental Response,

Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, and the

Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 *et seq.*  The Warrens

also assert causes of action under Pennsylvania state law, including: (1) claims under the

Pennsylvania Hazardous Sites Cleanup Act ("HSCA"), 35 Pa. Cons. Stat. § 6020.101 *et seq.*;

(2) negligence *per se*; (3) private nuisance; (4) strict liability; (5) trespass; and (6) medical

monitoring.  Defendants move to dismiss the Warrens' amended complaint.  For the reasons that

---

[1]        The Warrens also named as defendants Bishop Tube Corp. ("Bishop Tube"), Christiana Metals Corp. ("Christiana"), Electralloy Corp. ("Electralloy"), Sonobound Ultrasonics, Inc. ("Sonobound"), Marcegaglia, S.P.A. ("MSPA") and the Central and Western Chester County Industrial Development Authority ("the Development Authority").  (ECF No. 8.)  The Warrens voluntarily dismissed MSPA on September 21, 2015 (ECF No. 29) and Sonobound on December 4, 2015.  (ECF No. 48.)  Bishop Tube, Christiana and Electralloy have not been served or made an appearance.  The Development Authority filed an answer to the Warrens' amended complaint on August 25, 2015 (ECF No. 15.), and has not filed a motion to dismiss.  The Court's analysis therefore only applies to Johnson Matthey, Whittaker, Marcegaglia and Constitution Drive.

follow, Defendants' motions to dismiss the Warrens' federal claims are granted.  The Court will not exercise supplemental jurisdiction over the remaining state law claims.  Those claims are accordingly dismissed without prejudice.

**I.**

From 1951 to 1999, the site located at 1 Malin Road, Malvern, Pennsylvania ("Bishop Tube Site" or "the Site"), was used to manufacture and process metal alloy tubes and related equipment.  (Am. Compl. ¶ 18, ECF No. 8.)  At various points throughout that time period, Johnson Matthey, Whittaker and Marcegaglia each individually owned and/or operated the Bishop Tube Site.  (*Id*. ¶¶ 19–32.)  Constitution Drive currently owns the Site.  (*Id*. ¶ 50.)

In 1980, the United States Environmental Protection Agency ("EPA") added the Bishop Tube Site to the Comprehensive Environmental Response, Compensation and Liability List ("CERCLIS").[2]  (*Id*. ¶ 42.)  In 1983, the Pennsylvania Department of Environmental Protection ("PADEP") conducted a non-invasive, non-sampling preliminary assessment of the Site.  (*Id*. ¶ 43.)  Two years later, the EPA conducted a subsurface investigation of the Site.  (*Id*. ¶ 44.)  From 1981 to 1999, "partial characterizations" were conducted at the Bishop Tube Site.  (*Id*. ¶ 45.)  In 1999, the PADEP took over response actions at the Site to conduct: (1) periodic sampling of the soil, surface water and groundwater; (2) vapor intrusion pathway analysis; and (3) maintenance of monitoring wells in the contaminated aquifer.  (*Id*. ¶ 49.)

The Warrens' home is located near the Bishop Tube Site at 54 Conestoga Road, Malvern, Pennsylvania.  (*Id*. ¶¶ 5–6.)  The Warrens allege that during their respective periods of

---

[2]	The EPA performs a preliminary assessment for all sites which are placed on the CERCLIS.  *See United States v. Atlas Minerals & Chemicals, Inc*, No. CIV. A. 91-5118, 1995 WL 510304, at *5 (E.D. Pa. Aug. 22, 1995).  The preliminary assessment is a screening tool which constitutes the first stage of the CERCLA enforcement process.  *See id*. (citing 40 C.F.R. § 300.420(b)).

ownership, Defendants "used or permitted the use of hazardous substances, including trichloroethylene ("TCE"), during the manufacturing process for their seamless stainless steel and other products." (*Id*. ¶ 37.)  The EPA has classified TCE as a known carcinogen.[3]  (*Id*. ¶ 38.)  As a result of Defendants' actions, TCE was disposed into the Bishop Tube Site's soils and groundwater.  (*Id*. ¶ 39.)  Subsurface migration of the groundwater reached the aquifer beneath the Warrens' property, and as a result, contaminated their well water.  (*Id*. ¶ 40.)  The Warrens allege that the contaminated drinking water "poses an imminent and substantial endangerment to their health and safety." (*Id*. ¶ 41.)  They contend that Constitution Drive has conducted response actions under agreement with the PADEP which include "the installation of a soil vapor extraction and air sparging system designed to capture and remove contamination from subsurface soils at the Bishop Tube Site." (*Id*. ¶ 51.)  The Warrens allege however that "none of the Defendants have taken any steps to actively and effectively remediate the contamination . . . which has and continues to migrate onto the Warren property and neither the EPA nor the PADEP have taken any steps to compel such remedial activity."  (*Id*. ¶ 52.)

The Warrens filed their initial complaint on April 13, 2015.  (ECF No. 1.)  Johnson Matthey filed a motion to dismiss the complaint on July 27, 2015.  (ECF No. 5.)  The Warrens filed a response on August 10, 2015 (ECF No. 6), but two days later, filed an amended complaint rendering Johnson Matthey's motion moot.  (ECF No. 8.)  Defendants filed their respective motions to dismiss the amended complaint[4] (ECF Nos. 11, 17, 18, 33) and the Warrens filed their responses.  (ECF Nos. 19, 21, 22, 37.)  The Court heard oral argument on the motions on November 23, 2015.  (ECF No. 47.)  At oral argument, the Court requested that the parties

---

[3]     U.S. Environmental Protection Agency, Toxicological Review of Trichloroethylene 4-632 (2011), http://cfpub.epa.gov/ncea/iris/iris_documents/documents/toxreviews/0199tr/0199tr.pdf.

[4]     Defendants' motions advance the same substantive arguments in all material respects.  (*See generally* ECF Nos. 11, 17, 18, 33, 49.)

submit supplemental briefing on the following three issues: (1) the Court's ability to consider documents relating to the PADEP remedial and investigative processes at the Bishop Tube Site; (2) the Court's ability to consider an Amended Consent Order pursuant to which Whittaker and Johnson Matthey, under the direction of the PADEP, are engaging in remedial work at the Bishop Tube Site; and (3) the Court's ability to consider the existence and effect of a water filtration system installed in the Warrens' home.  (Oral Arg. 75:14–76:8; 80:2–7; 83:16–24.)

## II.

Defendants move to dismiss the Warrens' claims under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and/or Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[5]

### A.

A party's Rule 12(b)(1) motion "may be treated as either a facial or factual challenge to the court's subject matter jurisdiction."  *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) *modified*, *Simon v. United States*, 341 F.3d 193 (3d Cir. 2003) (referencing *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).  When presented with a facial attack, the Court "must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Id*.  When analyzing a factual attack however, "the court may consider evidence outside the pleadings," *id*. (referencing *Gotha v. United States*, 115 F.3d 176, 178–79 (3d Cir. 1997) (citing *Mortensen*, 549 F.2d at 891)), and "no presumption of truthfulness attaches to the allegations of

---

[5]       Whittaker additionally moves for a more definite statement of the Warrens' state law claims under Rule 12(e).  (Whittaker Mot. Dismiss at 23, ECF No. 17.)  Because the Court declines to exercise supplemental jurisdiction over those claims, *see infra* Part VI, it need not address Whittaker's argument.

the plaintiff." *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008), *as amended* (Sept. 29, 2008).  A factual attack puts the "burden of proving subject matter jurisdiction on the plaintiff." *CNA*, 535 F.3d at 139.  This is so because at issue in a factual attack is the Court's "very power to hear the case."  *Mortensen*, 549 F.2d at 891.  "A motion to dismiss for want of standing [whether facial or factual] is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter."  *Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (quoting *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007)).

The Third Circuit Court of Appeals has "outlined procedures for ensuring that a ruling on a Rule 12(b)(1) factual attack be based on an adequate factual record."  *Gould*, 220 F.3d at 177 (citing *Int'l Ass'n of Machinists & Aerospace Workers v. Nw. Airlines, Inc.*, 673 F.2d 700 (3d Cir. 1982)).

> If the defendant raises no challenge to the facts alleged in the pleadings, the court may rule on the motion by accepting the allegations as true.  If the defendant contests any allegations in the pleadings, by presenting evidence, the court must permit the plaintiff to respond with evidence supporting jurisdiction.  The court may then determine jurisdiction by weighing the evidence presented by the parties.  However, if there is a dispute of a material fact, the court must conduct a plenary trial on the contested facts prior to making a jurisdictional determination.

*Id.* (citing *Int'l Ass'n of Machinists*, 673 F.2d at 711–12).

**B.**

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead factual allegations sufficient "to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The "mere possibility of misconduct" is not enough.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id.* at 678.

5

(quotation and citation omitted).  Speculative and conclusory statements are not enough.  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions . . . a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  The complaint must also "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."[6]  *Id.*

The court must construe the complaint in the light most favorable to the plaintiff.  *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010) (quoting *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009)).  However, while all allegations contained in the complaint must be accepted as true, the court need not give credence to mere "legal conclusions" couched as facts.  *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."  *Id.*

To resolve a 12(b)(6) motion, courts may "consider . . . matters of public record."  *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004).  The Third Circuit has defined a public record, "for purposes of what properly may be considered on a motion to dismiss, to include . . . letter decisions of government agencies . . . and published reports of administrative bodies." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993) (internal citations omitted); *see also Kuhns v. City of Allentown*, 636 F. Supp. 2d 418, 425 (E.D. Pa. 2009).

---

[6]     The Complaint generally asserts all claims against all Defendants.  Certain Defendants are—by the Warrens' own allegations—incapable of liability under certain counts.  For example, the Warrens allege that "none of the Defendants have taken *any* steps to actively and effectively remediate the contamination."  (Am. Compl. ¶ 52.) (emphasis added).  In the preceding paragraph however, the Warrens allege that "Constitution Drive has conducted limited response actions . . . which include[] the installation of a soil vapor extraction and air sparging system designed to capture and remove contamination."  (*Id.* ¶ 51.)  This type of catch all pleading certainly fails to give the Defendants fair notice under *Twombly* and *Iqbal*.

## III.

Count I of the Warrens' amended complaint seeks three forms of relief under CERCLA: (1) recovery of response costs under 42 U.S.C. § 9607(a)(4)(B); (2) a declaratory judgment on liability for future response costs or damages under 42 U.S.C. § 9613(g)(2); and (3) litigation costs and fees.[7]  (Am. Compl. ¶¶ 61–62, 64–65, 107(f).)

### A.

Defendants move to dismiss Count I—insofar as it seeks recovery of response costs— under Rule 12(b)(6).  CERCLA provides that:

> [A]ny person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for . . . any . . . *necessary* costs of response *incurred* by any other person *consistent with the national contingency plan.*

42 U.S.C. § 9607(a)(4)(B) (emphasis added).  Recoverable response costs under § 9607(a)(4)(B) must therefore be: (1) necessary and consistent with the national contingency plan; (2) incurred by the party seeking recovery; and (3) incurred before the lawsuit.  *See U.S. Virgin Islands Dep't of Planning & Nat. Res. v. St. Croix Renaissance Grp., L.L.L.P.*, 527 F. App'x 212, 214 (3d Cir. 2013); *see also United States v. Atl. Research Corp.*, 551 U.S. 128, 129 (2007) (finding response costs can only be recovered "by a private party that has itself incurred cleanup costs"); *New Jersey Tpk. Auth. v. PPG Indus., Inc.*, 197 F.3d 96, 104 (3d Cir. 1999) (finding costs may only be

---

[7]     The Warrens also allege a claim for recovery of natural resource damages under 42 U.S.C. § 9607(a)(4)(C). Defendants contend that the Warrens lack standing to bring a claim under the statute.  It is well settled that private parties do not have standing to assert claims for damages to natural resources under CERCLA.  *See Artesian Water Co. v. Gov't of New Castle Cty.*, 851 F.2d 643, 649 (3d Cir. 1988) (citing 42 U.S.C. § 9601(16)).  Counsel for the Warrens conceded that his clients lack standing to bring such claims.  (Oral Arg. 16:8–23.)  The Warrens' claim for recovery of natural resource damages is accordingly dismissed pursuant to Rule 12(b)(1).

pursued by an innocent party that has *undertaken* hazardous waste cleanup); *Artesian Water Co. v. Gov't of New Castle Cty.*, 659 F. Supp. 1269, 1289 (D. Del. 1987) *aff'd*, 851 F.2d 643 (3d Cir. 1988) (finding a $10 million alternative water supply *unnecessary* where contaminants were no longer threatening drinking water).

The Warrens allege that after the migration of hazardous substances onto the property, "response actions were taken and are needed which have and will result in the incurrence of response costs within the meaning of . . . 42 U.S.C. § 9601, [and] will be consistent with the National Contingency Plan." (Am. Compl. ¶ 61.) The Warrens do not allege that *they* incurred any response costs or what response costs, if any, were actually incurred. (*See generally* Am. Compl.) Rather, they state in conclusory fashion that "response actions were taken . . . which have . . . result[ed] in the incurrence of response costs." (*Id.* ¶ 61.) The Court need not consider such "[t]hreadbare recitals" and "conclusory statements." *Iqbal*, 556 U.S. at 678.

At oral argument however, counsel for the Warrens stated that the only response cost his clients have incurred to date is their purchasing of bottled water. (Oral Arg. 49:16–23; 60:15–61:7.) CERCLA defines "response" as "remove, removal, remedy, and remedial action." 42 U.S.C. § 9601(25). "Remedial action" includes, *inter alia*, the "provision of alternative water supplies." 42 U.S.C. § 9601(24). However, those alternative water supplies must be necessary "to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment." *Id.* Counsel pointed the Court to two cases, *Mateer v. U.S. Aluminum*, No. CIV. A. 88-2147, 1989 WL 60442 (E.D. Pa. June 6, 1989) and *Coburn v. Sun Chem. Corp.*, No. CIV. A. 88-0120, 1989 WL 83518 (E.D. Pa. July 24, 1989), which purportedly stand for the position that purchasing bottled water constitutes a recoverable response cost under CERCLA.

In *Mateer*, the court denied defendant's motion for summary judgment where the plaintiff had made the requisite showing that the defendant may have been responsible for contaminating the groundwater.  1989 WL 60442, at *6.  The court did not address the issue of whether bottled water constitutes a response cost under CERCLA.  Similarly, the court in *Coburn* never addressed whether a party could recover the cost of purchasing bottled water.  1989 WL 83518, at *1.  The Court is unaware of any cases which support the assertion that purchasing bottled water is a recoverable response cost.  Even if bottled water *could* constitute a response cost, the Warrens fail to show that incurring such cost was "necessary."  42 U.S.C. § 9607(a)(4)(B).

As discussed above, *see supra* Part II(B), the Court may "consider . . . matters of public record" for purposes of deciding a Rule 12(b)(6) motion.  *Lum*, 361 F.3d at 221 n.3.  In their supplemental brief, Defendants provided a number of PADEP reports.  (Defs.' Supplemental Brief ("Supp. Br.") at Exs. A–R, ECF No. 49.)  Defendants argue that these reports establish that purchasing bottled water was unnecessary given the installation of a filtration system in the Warrens' home.  (Defs.' Supp. Br. at 5.)  Defendants contend that these records can be considered at the 12(b)(6) stage as "matters of public record."  (*Id*. at 5–6.)  In their supplemental response brief, the Warrens did not rebut or even challenge Defendants' position.  (*See generally* Pls.' Supp. Br.)  Indeed, the Warrens cite the Defendants' exhibits in their brief.  (*Id*. at 3.)  "Where an issue of fact or law is raised in an opening brief, but it is uncontested in the opposition brief, the issue is considered waived or abandoned by the non-movant in regard to the uncontested issue."  *Markert v. PNC Fin. Servs. Grp., Inc.*, 828 F. Supp. 2d 765, 773 (E.D. Pa. 2011).  Waived or not, the Court may consider the attached public records because they clearly constitute "letter decisions of government agencies . . . and published reports of administrative bodies."  *Pension*, 998 F.2d at 1197 (internal citations omitted).  All of the reports and letters

were prepared either by the PADEP or by a consultant at the agency's request.  (Defs.' Supp. Br. at Exs. A–R.)

The PADEP's records establish that a Point of Entry Treatment system ("the system") was installed at the Warrens' home in 1999.  (Defs.' Supp. Br. at Ex. C.)  The system is comprised of two filters that remove hazardous compounds like TCE from the contaminated groundwater as it navigates from the well into the Warrens' home.  (*Id*. at Ex. D.)  When tested, the system's samples are taken pre-filter, mid-filter and post-filter.  (*Id*.)  Pursuant to EPA and PADEP standards, the Maximum Contaminant Level ("MCL") for TCE in drinking water (i.e. post-filter) is 5.0 ug/L.  40 CFR § 141.61(a); 25 Pa. Code § 109.202(a)(2).  The MCL is "the maximum permissible level of a contaminant in water which is delivered to any user of a public water system."  40 CFR § 141.2.  From 2002 to 2015, the system was tested by the PADEP eleven times.  (Defs.' Supp. Br. at Ex. A.)  The post-filter results on each test were less than 5.0 ug/L, and accordingly less than the MCL.  (*Id*.)  The highest level of post-filter TCE detected was 1.0 ug/L.  (*Id*.)

Results from the 2012 and 2015 samples were sent to the Warrens.  (*Id*. at Exs. Q, R.)  Additionally, results from six of the samples were sent to Kenneth W. Leasa—the former owner of the home and Plaintiff Paula Warren's father.  (*Id*. at Exs. D, F, H, J, K, M.)  If the water reaching the Warrens' home has consistently contained less TCE than the MCL—a fact that the Warrens do not dispute—it is hard to imagine why they would *need* to purchase bottled water "to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment."  42 U.S.C. § 9601(24).  The Warrens therefore fail to establish, for purposes of withstanding a 12(b)(6) analysis, that purchasing bottled water was a "necessary" response cost under § 9607(a)(4)(B).

10

**B.**

Defendants advance a Rule 12(b)(1) facial attack against the Warrens' claim for a declaratory judgment on liability for future response costs or damages under 42 U.S.C. § 9613(g)(2). That statute provides:

> In any [action for recovery of the costs referred to in section § 9607] . . . the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages.

42 U.S.C. § 9613(g)(2). A plaintiff may not obtain declaratory relief for *future* response costs under § 9613(g)(2) unless they have first incurred response costs under § 9607(a)(4)(B). *See Ambrogi v. Gould, Inc.*, 750 F. Supp. 1233, 1243 (M.D. Pa. 1990) ("Relevant case law provides that before a private party may seek declaratory relief or damages, a plaintiff must affirmatively demonstrate that he has incurred necessary costs of response.") (internal citations omitted). Because the Warrens fail to allege facts which could support a claim for response costs under § 9607(a)(4)(B), *see supra* Part III(A), they lack standing to seek declaratory relief for future response costs under § 9613(g)(2).

The Warrens also seek a declaratory judgment for future damages under § 9613(g)(2). (Am. Compl. ¶ 65.) The term "damages" in § 9613(g)(2) is defined as "damages for injury or loss of natural resources." 42 U.S.C. § 9601(6). As private parties, the Warrens lack standing to bring claims for natural resource damages under CERCLA. *See supra* note 6. "A plaintiff who lacks standing to bring an action for natural resource damages recovery also lacks standing to bring an action for declaratory judgment regarding liability for future natural resource damages recovery." *Borough of Sayreville v. Union Carbide Corp.*, 923 F. Supp. 671, 681 (D.N.J. 1996) (collecting cases). The Warrens' § 9613(g)(2) claim is accordingly dismissed pursuant to Rule 12(b)(1).

**C.**

The Warrens also seek recovery of litigation costs under CERCLA.  (Pls.' Resp. to

Whittaker Mot. Dis. at 9, ECF No. 22.)  The United States Supreme Court has held that

"CERCLA [§ 9607] does not provide for the award of private litigants' attorney's fees associated

with bringing a cost recovery action."  *Key Tronic Corp. v. United States*, 511 U.S. 809, 819

(1994).  In some cases however, an attorney's work "that is closely tied to the *actual cleanup*

may constitute a necessary cost of response in and of itself under the terms of [§ 9607(a)(4)(B)]."

*Id*. at 820 (emphasis added).  Fees are recoverable in these situations "because they are not

incurred in pursuing litigation."  *Id*. (internal citations omitted).  The Warrens' claim does not

fall under this narrow exception to the rule, and is therefore dismissed pursuant to Rule 12(b)(1).

**IV.**

Count II of the Warrens' amended complaint seeks injunctive relief under RCRA's

citizen suit provision, 42 U.S.C. § 6972(a)(1)(B). [8]  (Am. Compl. ¶ 71.)  Defendants contend that

the Warrens' RCRA claim should be dismissed under Rule 12(b)(6) and/or Rule 12(b)(1).

**A.**

Defendants argue that the Warrens fail to state a claim for injunctive relief under RCRA's

citizen suit provision, which states:

> [A]ny person may commence a civil action on his own behalf . . . against any
> person, including . . . [a] past or present transporter, or past or present owner or
> operator of a treatment, storage, or disposal facility, who has contributed or who
> is contributing to the past or present handling, storage, treatment, transportation,

---

[8]      The Warrens also allege a claim for response costs, attorneys' fees and expert witness fees under RCRA.
(Am. Compl. ¶ 71.)  RCRA does not provide the Court with subject matter jurisdiction over a claim for response
costs.  *See Meghrig v. KFC W., Inc.*, 516 U.S. 479, 486 (1996).  The Warrens' remaining claim for attorneys' fees
and expert witness fees is moot given the Court's dismissal of the Warrens' RCRA claim.  *See infra* Part IV(A)–(B).

12

or disposal of any solid or hazardous waste which may present *an imminent and substantial endangerment to health or the environment*.

42 U.S.C. § 6972(a)(1)(B) (emphasis added). Defendants contend that the Warrens fail to sufficiently allege, for purposes of a 12(b)(6) analysis, that the contamination poses an "imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B). An endangerment can only be "imminent" if it "threatens to occur immediately." *Meghrig*, 516 U.S. at 480. This distinction "quite clearly excludes waste that no longer presents such a danger." *Id.* A "substantial endangerment" is one which creates "some reasonable cause for concern that someone or something may be exposed to a risk of harm if remedial action is not taken." *United States v. Union Corp.*, 259 F. Supp. 2d 356, 400 (E.D. Pa. 2003) (internal citations omitted). A number of courts have found that a contaminated water supply does not pose an imminent and substantial endangerment where plaintiffs are not drinking the contaminated water. *See Two Rivers Terminal, L.P. v. Chevron USA, Inc.*, 96 F. Supp. 2d 432, 446 (M.D. Pa. 2000) ("The fact that no one is drinking this water eliminates it as a threat to health or the environment."); *see also Scotchtown Holdings LLC v. Town of Goshen*, No. 08-CV-4720, 2009 WL 27445, at *2 (S.D.N.Y. Jan. 5, 2009) ("Accordingly, courts routinely dismiss RCRA claims where, notwithstanding the existence of hazardous substances in a water supply, the specific factual circumstances at issue prevent humans from actually drinking contaminated water.").

The Warrens merely allege that their "contaminated drinking water poses an imminent and substantial endangerment to their health and safety." (Am. Compl. ¶ 41.) The insufficiency of such a conclusory statement aside, the Warrens' amended complaint does not allege that they are drinking the water. (*See generally* Am. Compl.) To the contrary, counsel stated that the Warrens are drinking bottled water. (Oral Arg. 49:16–23; 60:15–61:7.) Even if they were

13

drinking the water, the PADEP reports—which the Court can consider under a 12(b)(6) analysis as matters of public record—establish that the Warrens' drinking water is safe. *See supra* Part III(A). Such "specific factual circumstances" certainly "prevent [the Warrens] from actually drinking contaminated water." *Scotchtown*, 2009 WL 27445, at *2. The Warrens therefore fail to sufficiently allege an imminent and substantial endangerment to their health and safety.

## B.

Defendants also assert a factual attack against the Warrens' RCRA claim under Rule 12(b)(1). RCRA grants a district court jurisdiction "to order [a person who may have contributed to endangerment] to take such . . . action *as may be necessary*." *Trinity Indus., Inc. v. Chicago Bridge & Iron Co.*, 735 F.3d 131, 139–40 (3d Cir. 2013) (citing 42 U.S.C. § 6972(a)(1)(B)) (emphasis added). Defendants contend that injunctive relief is unnecessary, and that the Court therefore lacks subject matter jurisdiction over the Warrens' RCRA claim. (Defs.' Supp Br. at 10.) On a factual attack, "no presumption of truthfulness attaches to the allegations," and the "burden of proving subject matter jurisdiction [rests with] the plaintiff." *CNA*, 535 F.3d at 139. Additionally, "the court may consider evidence outside the pleadings." *Gould*, 220 F.3d at 176 (referencing *Gotha*, 115 F.3d at 178–79 (citing *Mortensen*, 549 F.2d at 891)). Defendants contend that injunctive relief is unnecessary for two reasons: (1) an Amended Consent Order is currently in place before our Court pursuant to which Whittaker and Johnson Matthey, under the direction of the PADEP, are engaged in remedial work at the Bishop Tube Site;[9] and (2) the PADEP reports establish that the Warrens' drinking water is safe.

---

[9] Amended Consent Order, *Commonwealth of Pennsylvania Dept. of Environmental Protection v. Whittaker Corporation*, No.08-cv-06010 (E.D. Pa. Apr. 9, 2012) (Dalzell, J.), ECF No. 19.

The Third Circuit in *Trinity Indus., Inc. v. Chicago Bridge & Iron Co.*, 735 F.3d 131 (3d Cir. 2013) affirmed a district court's denial of RCRA injunctive relief where a Consent Order was in place requiring the defendant to take remedial action under the PADEP's supervision.  *Id.* at 140.  The denial of injunctive relief was based on the fact that the Consent Order's conditions were being effectively implemented, rendering further judicial action unnecessary.  *Id.* (*comparing Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 431 (5th Cir. 2013) (denying injunctive relief where: executive branch was overseeing the cleanup; there was no reason to determine that that the cleanup scheme was deficient or ineffective; and the plaintiff failed to articulate how or why the Court should oversee remediation already under the executive branch's supervision), *with Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 399 F.3d 248, 267 (3d Cir. 2005) (affirming grant of injunctive relief where defendant's dilatory tactics and the New Jersey Department of Environmental Protection's inability to effectively deal with those tactics thwarted the remediation process)).

The Amended Consent Order was entered on April 9, 2012, and requires the PADEP to provide Judge Dalzell with progress reports on the remedial work being conducted by Whittaker and Johnson Matthey at the Bishop Tube Site.  Amended Consent Order, *supra* note 8.  The Amended Consent Order has not been vacated, overruled or otherwise modified.  *Id.* Additionally, the PADEP reports establish that there is no threat to the Warrens' drinking water as all post-filter TCE levels are less than the 5.0 ug/L MCL.  *See supra* Part III(A).  Thus, as in *Trinity*, remedial steps have been and continue to be effective, rendering any mandatory injunction under 42 U.S.C. § 6972(a)(1)(B) unnecessary.

The Warrens were "permit[ted] . . . to respond with evidence supporting jurisdiction," but failed to do so.  *Gould*, 220 F.3d at 177 (citing *Int'l Ass'n of Machinists*, 673 F.2d at 711–12).

The Warrens contend that the "potential for vapor intrusion" exists because the filtration system only treats the groundwater entering the Warrens' home.  (Pls.' Supp. Br. at 2.)  In support, the Warrens provided the Court with a 130 page EPA manual on Point of Entry Treatment Systems and two graphs showing how vapor intrusion can occur.  (Pls.' Supp. Br. at Exs. A–C.)  While these graphs are generally informative on the topic of vapor intrusion, they shed no light on the *necessity* of an injunction in this case which would establish subject matter jurisdiction.  The "potential" for vapor intrusion does not create a situation of necessity warranting judicial intervention.  To the contrary, the Warrens allege that Constitution Drive has conducted response actions under agreement with the PADEP which include "the installation of a soil vapor extraction and air sparging system designed to capture and remove contamination from subsurface soils at the Bishop Tube Site."  (*Id*. ¶ 51.)  The Warrens' effort to establish necessity is belied by their own allegations and their claim for injunctive relief under RCRA fails under Rule 12(b)(1).[10]

## V.

The Warrens will not be allowed to amend their complaint again.  A district court may properly deny leave to amend where a party has repeatedly failed to cure deficiencies in their

---

[10]    Dismissal would also be appropriate if the Court analyzed the necessity of an injunction under a 12(b)(6) standard.  To resolve a 12(b)(6) motion, a court may take judicial notice of other court proceedings in addition to the allegations in the complaint.  *See Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426–27 (3d Cir. 1999) (collecting cases).  The Third Circuit has explained that a court "may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity."  *Id*. at 426.  The Court may therefore look to the existence of other judicial proceedings to see if they "contradict[] the complaint's legal conclusions or factual claims."  *Id*. at 427 (referencing *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 259 (3d Cir. 1998)).

In support of their necessity argument, the Warrens have alleged that "none of the Defendants have taken any steps to actively and effectively remediate the contamination . . . which has and continues to migrate onto the Warren property and neither the EPA nor the PADEP have taken any steps to compel such remedial activity."  (Am. Compl. ¶ 52.)  Even setting aside their own allegation that Constitution Drive is in fact conducting "response actions . . . under agreement with the PADEP," the existence of the Amended Consent Order contradicts the Warrens' assertions that nothing is being done.  Amended Consent Order, *supra* note 8.

complaint.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962).  Leave may also be denied where further amendment would be futile.  *See id.*  "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (citing *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996) (internal citations omitted)).  Thus, in assessing futility, the district court should apply "the same standard of legal sufficiency [that] applies under Rule 12(b)(6)." *Id*.

The Warrens filed their original complaint on April 13, 2015.  (Compl., ECF No. 1.) Johnson Matthey filed a motion to dismiss the original complaint, asserting the exact same CERCLA and RCRA arguments articulated above.  (*See* Johnson Matthey's First Mot. to Dismiss, ECF No. 5.)  The Warrens filed their amended complaint which, in all material respects, mirrored their original complaint.  (*Compare* Compl., ECF No. 1, *with* Am. Compl., ECF No. 8.)  The Warrens were aware of the original complaint's deficiencies, yet failed to cure those deficiencies with their amended complaint.  The Warrens lack standing to obtain relief under any of their RCRA claims, and three out of four CERCLA claims.  Their claim for response costs is clearly futile given that the only response cost allegedly incurred was purchasing bottled water.  The Court is unaware of any precedent allowing a party to recover under CERCLA when the only alleged response cost is buying bottled water, particularly when a filtration system renders that cost unnecessary.  Any amendment would be futile and Counts I and II are accordingly dismissed with prejudice.

**VI.**

The Warrens' federal claims establish the bases for this Court's jurisdiction.  With the dismissal of those claims, the Court declines to exercise supplemental jurisdiction over the Warrens' remaining state law claims.  *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim [if] the district court has dismissed all claims over which it has original jurisdiction.").  Counts III–VIII of the Warrens' amended complaint are therefore dismissed without prejudice.


BY THE COURT:


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.